MERCHANTS NAT. BANK OF MOBILE v. COMMISSIONER OF INTERNAL REVENUE.

No. 14097.

United States Court of Appeals
Fifth Circuit.

Nov. 10, 1952.

Geo. E. H. Goodner, Washington, D. C., for petitioner.

Walter Akerman, Jr., Robert N. Anderson, Sp. Assts. to Atty. Gen., Ellis N. Slack, Acting Asst. Atty. Gen., Mason B. Leming, Acting Chief Counsel, John M. Morawski, Sp. Atty., Bur. Int. Rev., Washington, D. C., for respondent.

Before BORAH, STRUM, and RIVES, Circuit Judges.

STRUM, Circuit Judge.

This is a petition to review a decision of the Tax Court which sustained deficiency assessments in petitioner's income taxes for the years 1943 and 1944.

The 1943 deficiency arose as follows: Petitioner is a national bank. In 1934, it owned all the stock of Merchants Securities Corporation, which dealt in securities. As the Banking Act of 1933, 12 U.S.C.A. § 377, prohibited such affiliation after June 16, 1934, liquidation of the Securities Corporation was begun May 19, 1934, the bank acting as liquidating trustee.

The Securities Corporation owned all the capital stock of Dorgan-McPhillips Packing Corporation, which it held for sale in the ordinary course of its business. When liquidation of the Securities Company was completed on March 31, 1937, the market value of the Packing Company stock was quite low. In an effort to avoid taking a loss on the stock, and it being unnecessary to sell it at that time to pay the Securities Company's debts, the bank as owner of the Securities Company's surplus assets took over the stock and held it for eventual sale but awaiting a more favorable market. The bank entered the stock on its books as an asset on March 31, 1937, at the then appraised value of $43,770.17. It held the stock until 1943, when it sold it for $2,380.65, thus incurring a loss of $41,389.52, which the bank deducted on its 1943 return as an "ordinary" loss.

The Commissioner recognized the loss, but held that the stock was held by the bank as a capital asset within the meaning of section 117(a)(1) of the Internal Revenue Code, 26 U.S.C.A. § 117(a)(1), and the loss therefore a long term capital loss, not an ordinary loss, which substantially reduces the deduction to which petitioner is entitled. The Commissioner entered a deficiency assessment for the difference, which the Tax Court sustained, and its decision is here for review.

Although under 12 U.S.C.A. § 24, it may have been permissible for the bank to acquire the Packing Company stock as an "investment," national banks are forbidden by law to "engage in the business" of selling stocks. 12 U.S.C.A. § 378. The bank therefore could not have lawfully acquired the Packing Company stock "primarily" for sale in the ordinary course of its business, but could only acquire it as an "investment" pursuant to 12 U.S.C.A. § 24. Moreover, there is no evidence that the bank made any effort to sell the stock between 1937 and 1943, nor that it held the stock "primarily" for sale. On the contrary, it appears that the bank continued to hold the stock for six years, awaiting an improvement in its market value, which persuasively

indicates that petitioner regarded the stock as a capital investment, not as property held primarily for sale in the ordinary course of the bank's business. The Tax Court correctly sustained the Commissioner in holding that the loss in question was a capital loss, rather than an "ordinary" loss.

■ The bank rests its contention that this was an ordinary loss upon an earlier ruling by a Deputy Commissioner, dated September 7, 1943, contained in a letter to a national bank in Boston, which had acquired corporate stock from a commercial affiliate in process of liquidation in circumstances similar to, but not identical with, those here presented. We agree with the Commissioner that the Deputy Commissioner's previous ruling is inapplicable here, because of factual differences. Even if the facts were the same, however, the Commissioner has the power to overrule or modify a subordinate's ruling, or even his own, if he considers it unsound.

■ The 1944 deficiency arose from the following facts: On January 1, 1941, the petitioner held notes of Alabama Naval Stores Company, representing loans made by the bank to the Naval Stores Company, on which there was an unpaid balance of $49,025.00. In 1941 and 1943, at the direction of national bank examiners, the bank charged these notes off as worthless, thereafter holding them on a "zero" basis. Deductions for the charge-offs, as ordinary losses, were allowed in full by the Commissioner on petitioner's income tax returns in 1941 and 1943. In 1944, petitioner sold the notes to a third party for $18,460.58, which it reported on its return for 1944 as a long term capital gain and paid its tax on that basis. The Commissioner held this sum to be ordinary income, taxable at a higher rate than long term capital gains, and entered a deficiency assessment accordingly, in which he was sustained by the Tax Court. This is the basis of the 1944 controversy.

The rule is well settled, and this Court has held, that when a deduction for income tax purposes is taken and allowed for debts deemed worthless, recoveries on the debts in a later year constitute taxable income for that year to the extent that a tax benefit was received from the deduction taken in a prior year. Commissioner v. First State Bank of Stratford, 5 Cir., 168 F.2d 1004, 7 A.L.R.2d 738, certiorari denied 335 U.S. 867, 69 S.Ct. 137, 93 L.Ed. 412; Nat'l Bank of Commerce of Seattle v. Commissioner of Internal Revenue, 9 Cir., 115 F.2d 875.

When these notes were charged off as a bad debt in the first instance, the bank deducted the amount thereof from its ordinary income, thus escaping taxation on that portion of its income in those years. The amount subsequently recovered on the notes restores *pro tanto* the amount originally deducted from ordinary income, and is accordingly taxable as ordinary income, not as a capital gain. When the notes were charged off, and the bank recouped itself for the capital loss by deducting the amount thereof from its current income, the notes were no longer capital assets for income tax purposes. To permit the bank to reduce its ordinary income by the amount of the loss in the first instance, thus gaining a maximum tax advantage on that basis, and then permit it to treat the amount later recovered on the notes as a capital gain, taxable on a much lower basis than ordinary income, would afford the bank a tax advantage on the transaction not contemplated by the income tax laws.

The fact that the bank sold these notes to a third party, instead of collecting the amount in question from the maker of the notes does not avoid the effect of the rule above stated. Nor are the cases just cited distinguishable, as contended by appellant, because in the first the notes were distributed as a dividend in kind, and in the second were received by the taxpayer as part of a non-taxable reorganization. The controlling point in both cases is, as here, that the amount of the notes was originally deducted from ordinary income, and the owner-bank allowed a tax benefit on that basis, from which premise both courts concluded that the taxpayer should settle on the same basis as to sums subsequently recovered, since those sums stand in place of the income which escaped taxation in the year when the deduction was taken.

As the recoveries in question were ordinary income, not capital gains, the 1944 deficiency was properly entered.

Affirmed.